Good morning, Your Honors. May it please the Court. My name is Aaron Weber. I'm here on behalf of Mikkelson Land, LLLP, and my co-counsel. Seated at the counsel table is Arson Johnson. Your Honors, the primary focus for this particular case is the interpretation of contracts between the two litigating parties. Specifically and primarily, the Access, Surface Use, and Damage Agreement, which I'm going to refer to as the SUA during the course of this argument, which was executed in April of 2012, and the corresponding addendum to that agreement executed in April 2015. Because the District Court granted summary judgment in this case, Your Honor, the Court applies a de novo review standard. I want to discuss the overall purpose of the agreement so we can hone in on the argument in this particular case. Here, the SUA and the addendum are designed to succinctly describe the parties' rights and responsibilities related to Continental Resources' surface activities on Mikkelson Land's property and what amount of compensation is due to Mikkelson. There are numerous sources of authority for Continental's operations, as the District Court found in this case, including oil and gas leases, the relevant contracts, and its right as a unit operator. But the SUA itself found at Appendix 91 and the addendum found at Appendix 115 are the heart of this case. As the SUA in Recital D states, Continental and Mikkelson are stipulated in agreeing to, through the SUA, as to the rights to be granted by Mikkelson to Continental for access and surface use and compensation and damages to be paid for said rights. That's really why we're here. It's the compensation due to Mikkelson for Continental's installation of saltwater and freshwater pipelines on its property. The SUA is the master agreement in that respect. The addendum does not change that analysis. Mikkelson is not disputing that pipeline. However, the dispute is how Mikkelson should be compensated for the installation of those saltwater and freshwater pipelines. The SUA, which I mentioned is the only document that specifically provides for compensation for pipelines, does not authorize freshwater and saltwater pipelines and that they were eventually installed on Mikkelson's property. Therefore, the installation of those freshwater and saltwater pipelines pursuant to the SUA is a breach of contract. Therefore, Mikkelson is entitled... Maybe I missed a nuance, but it sounded like you said you don't dispute that they had the authority to install the water pipelines. Then you just said, but they don't have that authority. Your Honor, the authority is a fine distinction. The underlying agreements and the other authority cited by the District Court, such as Continental's rights as a unit operator, open the door for the installation of the pipelines. The oil and gas leases contained in the record that Continental has cited in this case discuss surface operations in various capacities. The purpose of the SUA is to define the compensatory terms for those costs associated with it, a per-rod cost, whatever that is. Yes, Your Honor, and it does. This is where the contractual construction doctrines come into play. Mikkelson argues and Mikkelson's interpretation and understanding of the contract when it was entered into is that the contract broadly and generally discusses saltwater and freshwater pipelines, section 3B1 Roman numeral 3, discusses that language that Your Honor... And the compensation if and when those are ever installed. Correct, Your Honor. They talk about that in that portion of the agreement, which substantially mirrors the language contained in the oil pipeline section and the gas pipeline section immediately preceding that. However, then shortly following that section, there's a limitation specifically contained in section 3B3 of the agreement that specifically states that the pipeline easements, as described in the agreement, are only for those pipelines shown in Exhibit C. And that Exhibit C was a specific and project-specific map discussing what pipelines were authorized and were to be compensated pursuant to the surface use agreement. That is a specific limitation on the otherwise broad and general language contained in section 3B1 Roman numeral 3. It talks about the broad grant of authority for Continental to install freshwater and saltwater pipelines. There's contradictory language in the contract. And when we look at these contract construction doctrines, we have to take the general and broad nature terms. But those are then subject to specific limitations. This is the Rolla versus Taint case authored by the North Dakota Supreme Court and also the secondary authority cited by Mickelson, including the CJS in the secondary statement. Counsel, even if the SUA was internally inconsistent or ambiguous, why doesn't the addendum clear up the confusion and give clear authority for the construction of this pipeline? Two parts to that question, Your Honor. Which is, one, the addendum on the second page of the addendum states that other terms of the SUA that are not otherwise modified by the addendum remain in full force in effect. That goes back to the specific project limitation contained in section 3B3 with the map that names the authorized pipelines, shows the general routes of those pipelines, and talks about the general length of the particular pipelines. And, Your Honor, even if the addendum does open the door to some pipelines, because it is inherently broader than the SUA, it's limited to activities related to the four specific oil and gas wells that are named in... I thought it said, but not limited to. It discusses the four underlying oil and gas wells that the addendum is related to. That addendum was solely executed to modify the SUA to allow for additional well sites not included in the original SUA. So the facilities and operations related to those particular wells are not, in one argument, limited in the addendum itself. But going back to the second page of that addendum, it talks about the other terms in the SUA still remaining in full force in effect. There is no specific language in the addendum that otherwise changes the map contained in Exhibit C to the SUA. If the parties had wanted additional pipelines to be installed as part of that network, could have included an additional map modifying the Exhibit C language. Continental also argues in its brief that other language in the SUA would be otherwise gutted if the court follows the specific limitation contained in Section 3B3 and the underlying Exhibit C. However, all the other language of the contract is not repugnant to that specific limitation. The only language that's contradictory that has to be ignored due to the hierarchy of terms general yields to specific is that one section in Section 3B1 Roman numeral 3. All the other language in the agreement can be given effect. So there's no other clauses or interpretation of the contract that needs to be concerned. Touching on the alternative argument advanced by Mickelson, because obviously we have some contradictory terms contained within the underlying contracts between the parties. In the alternative, Your Honors, this creates an ambiguity between what the parties actually intended throughout the course of their dealings in the underlying contracts. As the North Dakota Supreme Court reviewed in the Krenz v. XTO case, which also analyzed a pipeline easement, the underlying easement contained references to pipelines, numerous pipelines, and then a subsequent restriction talking about only one pipeline being authorized by that easement. The North Dakota Supreme Court determined that because of that conflicting language and the underlying circumstances that the contracts themselves were ambiguous. In this case, Mickelson and Continental have both presented rational arguments as far as the parties are concerned regarding the interpretation and regarding what the parties intended from the underlying contracts. Mickelson's declarations are found in the record discussing his understanding of what the parties were contracting to at the time. In light of the circumstances, because all of the freshwater and saltwater used for the operations at the time the contract was executed was handled by other means. There was no underlying need at the time for freshwater and saltwater pipelines. At the very least, Your Honors, this conflicting language creates an ambiguity. As a result, that ambiguity needs to be fleshed out by a trier of fact, and therefore a trial is necessary under the circumstances. So, Mickelson requests, Your Honors, that this court uphold those specific contractual limitations regarding pipeline installation and reverse the court's summary judgment decision related to that decision. The underlying contract limits the rights in the SUA for installation of saltwater and freshwater pipelines. The map contained in the agreement and referenced in the agreement is a specific limitation on the otherwise broad and general grant of authority for Continental's operations on Mickelson's property. Alternatively, Your Honor... What about... I think the district court mentioned this. What about... I think you mentioned it a little earlier, perhaps. What about rights to surface use under oil and gas leases and other real estate related documents? Surely those are in existence with respect to this activity. Yes, Your Honor, and they do exist. It's important to note that Continental, during its time preceding this litigation, only ever cited to the SUA as its authority to install the pipelines. All of the letters and receipts and other documentation that's part of the record, which can be found between 134 and 194, only discuss the SUA. The underlying oil and gas leases, which are also part of the record and the rights as unit operator, as I mentioned before, open the door for Continental to install the pipelines. That's not in dispute by Mickelson. However, none of those agreements specifically outline what amount of compensation is due to Mickelson. That was the goal of the SUA, was to set the compensatory terms for those activities. As Mickelson argues, those saltwater and freshwater pipelines were not made a part of that SUA due to that specific limitation in Section 3B3. Therefore, we need to have a trial on the underlying damages. Thank you, Your Honors. I'll reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. My name is Nathaniel James for the Applea Continental Resources. I'd like to begin by addressing the contract construction issue because that is the issue that this appellant raises on appeal. But I will turn to the disconnect that the Court has already drawn attention to with respect to the concession that Continental already had the right, independently from this agreement, to install these pipelines. So the District Court right... Doesn't that just go to the amount of compensation? Isn't that really what this case is about? If the contract controls to get paid X, if the contract doesn't control they might get paid Y. Thank you, Your Honor. Yes, I believe that's correct. And Mickelson concedes, and I think has conceded even an argument today, but in the reply brief that this agreement governs compensation for Continental's operations on the property. And the quoted language is regardless of whether or not the authority comes from this agreement or from existing rights. And the agreement itself is clear that Continental came to the table for the negotiations of this agreement with rights in hand. And the purpose of the compensation provisions in this agreement is to satisfy a statutory requirement under North Dakota law that operators compensate surface owners for damage to the property. So it serves two purposes. It expands the rights as the recitals note up front in the agreement. And it also compensates for the use of the property under all the rights that Continental possesses. The District Court rightly rejected Mickelson's argument that 3B3 negates the entire provision governing payment and compensation and rights for water pipelines because those terms can be harmonized. Under the District Court's holding, paragraph 3B3 has meaning as a limitation on the effect of Continental's up front lump sum payments for oil and gas pipelines. Those payments covered the depicted oil and gas lines only, but did not discharge Continental's obligation to pay for any additional links of pipeline as paragraph 3B6 governs or to pay for any future additional right-of-way for water pipelines as the water pipeline provision in paragraph 3B1 governs. The District Court's holding is faithful to the text and to the rules of construction. It didn't view this agreement through the isolated lens of a single provision, but construed it as a whole and gave meaning to all of the terms, including unique language governing the party's agreement regarding both oil and gas pipelines as a class and future additional water pipelines as a second class. The court considered the circumstances that counsel referenced at the time of the agreement. The parties knew in advance specific requirements for oil and gas pipelines, but only anticipated a future requirement for water pipelines. Water pipelines, as the District Court noted, could not have been mapped at the time of the agreement. The water pipeline provision differs from the oil and gas pipeline provision because rather than reducing the pre-measured, pre-mapped pipelines to a sum certain for an up-front payment, it provides Continental shall pay $75 per rod for any additional future right-of-way containing pipelines for water. And that's unique language, any additional future right-of-way. Additional meaning that water pipelines are in addition to the oil and gas pipelines, that are referenced in the prior paragraphs and depicted in the map. A future meaning, as the circumstances dictated at the time, the if and when of Continental's water pipeline installation wasn't known, but the parties still made provision for that known possibility up front. Mickelson's construction, importantly, is a construction of negation. Mickelson is asking the court to disregard or write out an entire paragraph of this agreement. And because that violates North Dakota's rules of construction, it is not a reasonable alternative construction of this agreement that is capable of creating ambiguity. And I think Mickelson understands that its argument is not one of harmonization. And so he argues that 3B3 is a super provision that controls over all other provisions in the contract. But the rule of construction that Mickelson relies on is found at North Dakota Century Code 9716. It applies to form contracts or contracts that contain handwritten or typewritten modifications. This is not a form contract, and we're not concerned with any handwritten or typewritten modifications. In our brief, we have highlighted a number of provisions in this document, all in the body of the agreement in the same typeface and font, that have particular application only to these parties and only to this property. And those provisions negate the argument that this could be a form. There are references to locations on the property by latitude and longitude. There are measurements for pipelines and roads. There are names of individuals who are authorized to receive confidential information. And the agreement tells us it's not a form. Section 17 says it was mutually drafted by the parties. Section 18 says that resulted from an arm's-length transaction. And there's subjective evidence for both of those propositions on the signature page of the agreement where you see that Mickelson's own counsel signed the agreement as well. So 9716 has no application. And that rule of construction, in any event, doesn't give contract parties a unilateral right to declare one-term controls. As the Court has heard a little bit about the addendum already, the District Court considered the addendum and found that it, too, negated Mickelson's argument. Mickelson argues on appeal that its interpretation of 3B3 swallows up the addendum that came three years later as well. But we have to look to the terms of the parties' agreement. And there Continental gave additional consideration, $100,000, for an addendum that, quote, was to expand the rights granted in the Surface Use Agreement. And it granted Continental the right to use the entire ranch property. The property description in the addendum is the same as the property description in SUA for any and all operations which in the sole and exclusive discretion of operator are deemed necessary. And then it has the non-exclusive list of the kinds of operations that are within the scope of that grant and pipelines are listed among them. So the District Court harmonized the addendum, the Surface Use Agreement and its terms, and gave effect to the parties' contract provisions regarding water pipelines. The judgment should and can be affirmed based on the propriety of that holding. Doesn't that interpretation, though, read the word only out of the reference to Exhibit C? Thank you, Your Honor. The word only still is given effect by the District Court's construction because the upfront payments that Continental made discharged Continental's compensation obligation only with respect to those pipelines that had been mapped in Exhibit C and had been pre-measured. And that was part of the rationale offered for the District Court for the harmonization of those terms. But the District Court also held that Continental had separate and independent authority to install these water pipelines on the property as a result of leases and unit rights. And importantly, that holding informed the trial court's grant of summary judgment on the contract, trespass, and injunction claims. Mickelson concedes this point, I think in an attempt to concede it away. But that unchallenged holding not only supports the trial court's answer to the authority question under the contract, it's also an independent reason to affirm the judgment. This agreement begins and ends with acknowledgments that Continental has rights already on the property. I mentioned earlier the recitals that acknowledge Continental's existing rights, and Section 1 is a grant of authority to use the property for operations. Under the leases, the compensation provisions state that they are to compensate and provide damages for operations under the leases. Well, this gets back to the question, and I guess I'm just slow on the pickup on this, but if there are oil and gas leases covering this property and unitization orders, perhaps, why do you need authority from the surface owner? Aren't those implicit? Aren't they carried with the leases or orders and a burden on the surface that the surface owner just has to assume? Right. It's a good question, Your Honor, and I appreciate it. The second part of the question is, the answer may be, from what I understood counsel to say, that really these documents that we're arguing about were just intended to set the compensation, if compensation was owing. So go ahead. Thank you. Up front in the agreement, the agreement notes that Continental is settling compensation and seeking to acquire additional rights. And so it may well be the case that Continental would enter into a surface use agreement to acquire the right to use the surface of a property for reasons that were not authorized by its existing leases and unit rights. But that's not in dispute in this case because Mickelson concedes this particular operation was, as the district court held, within that bundle of rights already settled in advance of this contract. Including the freshwater pipelines. That's correct. That was the holding of the district court that has been conceded as being correct. And Section 25 of the agreement tells us that those rights are not diminished by this contract unless specifically provided for in the agreement. And there are no specific terms that limit Continental's authority to install water pipelines on the property. There are terms of prohibition in this agreement. So, going further, if the district court was wrong and the surface use agreement and or addendum did not pertain to future pipelines that were laid, how would the compensation for those pipelines be determined? Well, the compensation provision in this agreement can be given effect as a contractual agreement regarding the surface damages that would be paid, whether the authority arises under this contract or arises under the leases. And the district court held it was both. We believe it's both. But that compensation provision governs regardless. And I think, as I mentioned from the reply brief at page 12, I think Mickelson concedes that compensation terms in this agreement compensate for both classes of uses. And so, Mickelson needs this court to disregard the water pipeline provision as a source of authority for pipelines and to disregard it as a provision that governs compensation for pipelines, leaving it with no effect. That's an entire paragraph in the agreement. So, what would that mean as far as compensation? There is a statutory provision in North Dakota that requires operators to compensate surface owners for damage to the property, but it is not a restriction on authority. This agreement contains clear terms that Continental's tender of payment for the damages that are scheduled in this agreement give rise to a release of all damage claims. And we argue that as an additional summary judgment ground that the district court didn't reach. But there is no dispute in the facts about Continental tendering all of the sums of money that this contract required with respect to water pipelines. And under Section 4, that's acknowledged as a full satisfaction for damage and injury to the property. And under Section 5, those payments effectuate a release of all of the damage claims that Mickelson says he would seek and even have a remand from this judgment. I'll just step back to briefly summarize where I think this case stands. There is a bit of a disconnect. Mickelson is asking the court to answer whether this agreement authorizes water pipelines. I think that's the wrong question for reasons we've discussed. I think the right question might have been, does this agreement prohibit water pipelines? But there's a second question of, does this agreement govern compensation? And it still does. And so, we began with eight causes of action. The parties presented by agreement, three of them for determination, on a competing motion for summary judgment. The court granted summary judgment on trespass, injunction, and the breach contract claims that related to these pipelines. And then Mickelson dismissed all of his other claims with prejudice, including claims that he could have asserted with prejudice. Now we're on appeal, and he concedes that summary judgment was appropriate on trespass and injunction because Continental had independent authority to lay these pipelines. And so, that is binding on Mickelson. The authority to lay these pipelines was not taken away by this contract that was signed in 2012. It existed at the time that Continental laid it in 2018. And this agreement expressly governs the amount of compensation that Continental would pay. And there's no dispute on the record that Continental complied with those provisions. Counsel, in the district court's order at paragraphs 10 and 11, it's reciting the history of this matter or this dispute. It talks about an objection that Mickelson lands previous counsel sent to Continental objecting to the installation of water pipelines in August of 2018. And then a response from Continental explaining why it believed it had authority to lay the water pipelines. So when did this stop being a dispute over authority and transition into a dispute only as to compensation? I think before the district court, it was certainly a dispute about both. On appeal, Mickelson conceded authority. And so the nature of the dispute has been narrowed at this junction. It was both. But I think the real issue has and continues to be one of compensation. And the order also recites that when these additional pipelines were laid, Continental paid, tendered to Mickelson, an amount of money. That's correct, Your Honor. Was that amount calculated under the formula set forth in this surface use agreement? That's correct, Your Honor. And there's no dispute about that. All right. Thank you. I see that my time is about up. I thank you for your time. We do respectfully request that the Court affirm the judgment in all respects. Thank you, Mr. James. Your Honors, I'd like to visit about three additional points during the course of my rebuttal argument. As identified by Your Honors, Continental's interpretation of the SUA as it advanced basically guts or takes away the definition of the term only as used in the SUA. Contract terms are given their ordinary and plain meaning unless some other definition is assigned to that term. And as defined by the American Heritage Dictionary, only means exclusively or solely. In looking at the SUA, it cannot both exclusively and solely limit down the compensatory or authorized pipelines to those shown on Exhibit C, which is the map, and also then grant an open door for future pipelines that are not depicted in Exhibit C, referenced by Section 3B3 of the contract. But if this is not a form, which I think there's agreement about, does it make any sense to have all this other language about future and additional water pipelines and then take that all away in one phrase with Exhibit C? Your Honor, and that's a good point. However, as articulated in the secondary authority cited by Mickelson, parties often use or don't pay attention to generalized language as much as they do to specific restrictions. And that's what sets up the hierarchy of contractual terms that general terms need to yield to specific terms because parties point specific attention to those very specific and desired terms. And that's what has to happen here. The inclusion of the specific restriction has to govern over the general discussion related to pipelines. And Judge Shepard, regarding your question regarding authority for compensation, the point of the surface use agreement is to take all of these different contracts with different legal descriptions with different units because there's various units inside of Mickelson's property that are contained within and discussed in the SUA and come up with a master agreement so everybody's on the same page. However, we're not all on the same page regarding that one specific issue related to saltwater and freshwater pipelines. So the compensatory terms of the SUA govern all the other activities. And importantly, Judge Graz, regarding the addendum. So again, is the fight over compensation? Yes, Your Honor. And so all the reference in the district court's order to finding that there was no trespass and there was no breach because Continental had the authority to install the pipelines. Is that just now not a part of any issue in the case? I'm out of time, Your Honor, to briefly answer your question. The authority to install the pipelines subject to the terms of the SUA. Since the SUA itself didn't authorize the saltwater and freshwater pipelines, we're looking at a finalized breach of contract claim and Mickelson is entitled to a trial on damages because those activities were outside of the scope of the compensatory terms in the SUA. Thank you, Your Honors. Thank you, counsel.